# United States Court of Appeals
## For the Second Circuit

August Term, 2025

(Argued: January 28, 2026     Motion Filed: June 19, 2026
Decided: July 13, 2026)

Docket No. 25-194-pr

_____

RAHEEM DELANO FULTON,

*Petitioner-Appellant*,

v.

MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY, U.S.
DEPARTMENT OF HOMELAND SECURITY, TODD LYONS, IN HIS OFFICIAL
CAPACITY AS ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, STEPHEN J. KURZDORFER, IN HIS OFFICIAL CAPACITY
AS ACTING FIELD OFFICE DIRECTOR, BUFFALO FIELD OFFICE,
ENFORCEMENT AND REMOVAL OPERATIONS, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY,
JOSEPH E. FREDEN, IN HIS OFFICIAL CAPACITY AS WARDEN, BUFFALO
FEDERAL DETENTION FACILITY,

*Respondents-Appellees*.[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before:

LOHIER, *Chief Judge*, CHIN and MENASHI, *Circuit Judges*.

Petitioner Raheem Delano Fulton, an individual with End Stage Renal Disease who is currently detained by Immigration and Customs Enforcement and subject to a final order of removal, moves under *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001), for an order releasing him pending a decision by this Court regarding the District Court's dismissal of his habeas corpus petition. We conclude that Fulton has demonstrated that (1) his petition raises substantial claims, and (2) extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. Accordingly, we GRANT Fulton's motion for bail pending appeal.

Judge Menashi dissents in a separate opinion.

Jessica Rofé, Rutgers Constitutional Rights Clinic, Newark, NJ, Anthony Enriquez, Sarah T. Gillman, Sarah Decker, Robert & Ethel Kennedy Human Rights Center, New York, NY, *for Petitioner-Appellant*.

Elizabeth K. Fitzgerald-Sambou, Senior Litigation Counsel, Melissa Neiman-Keltin, Assistant Director, Office of Immigration Litigation, Brett A. Shumate, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, *for Respondents-Appellees*.

PER CURIAM:

Petitioner Raheem Delano Fulton moves under *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001),[1] for an order releasing him pending a decision by the Court of Appeals regarding the District Court's dismissal of his habeas corpus petition. In order to be entitled to release, Fulton must demonstrate that (1) his petition raises substantial claims, and (2) extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

Applying that standard, we conclude that Fulton is entitled to release. First, as a prior panel of this Court has determined, he raises at least a substantial claim that the District Court improperly dismissed his request for medical-discharge planning relating to his life-threatening medical condition. *See* Dkt. No. 34 (April 30, 2025 Order Granting Stay of Removal) ("Fulton has made a strong showing that he is likely to succeed on the merits." (citation modified)); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as implausible the Government's suggestion that

---

[1] In his motion, Fulton cites to Federal Rule of Appellate Procedure 23(b) but relies principally on *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

3

§ 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (citation modified)).

Second, "extraordinary circumstances" exist that make bail necessary pending review of the District Court's dismissal of his habeas petition. *Mapp*, 241 F.3d at 230. Here, as the Government does not dispute, failure to supply adequate medical care will result in Fulton's "near certain death." Appellant's Mot. Reply Br. 1. These circumstances are sufficiently extraordinary to render the grant of bail necessary to make the habeas remedy fully effective. *See Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005).

The dissent claims what not even the Government dares to suggest: that Fulton's circumstances are not "extraordinary" enough because he has adequate medical care in custody. *See* Menashi, *J.*, dissenting, *infra* at 6. That claim ignores at least two important *facts* about Fulton that are clear from the record. First, as Fulton himself observes, he has already once nearly died in the custody of Immigration and Customs Enforcement ("ICE"), Appellant's Mot. Reply Br. 8 (Fulton noting that "[o]ne missed dialysis appointment in ICE custody has already led to severe life-threatening hyperkalemia." (citation modified)); Joint App'x at 17; Oral Arg. Audio 20:29–21:34 ("The dangers to Mr. Fulton if he

4

misses even one dialysis treatment are not hypothetical; in fact, they are very well-known to the Government."); 43:20–43:40; second, less than a year ago, Fulton's medical provider referred him for a kidney transplant evaluation, "for which," as Fulton asserts, "there is a clear survival benefit over those who remain on dialysis," Appellant's Mot. Br. 12 (citation modified), but ICE has refused Fulton's requests to facilitate a transplant, Appellant's Mot. Br. Ex. A; Dkt. No. 94.1 at 2; *see also* Appellant's Mot. Reply Br. 1, 9–10; Appellant's Mot. Br. 12–13.[2]

Taking a different tack, the dissent sings another refrain: that an immigrant challenging his prolonged detention "has the keys in his pocket and can end his detention immediately" because he can simply deport himself. *See* Menashi, *J.*,

---

[2] Fulton clearly argues that it is his "serious medical conditions *combined with* his prolonged detention," not merely his prolonged detention, that produce the extraordinary circumstances that justify granting his bail motion. Appellant's Mot. Reply Br. 7 (emphasis added). Indeed, Fulton suffers from not only End Stage Renal Disease but also a host of associated illnesses and complications that render his health precarious, including renal osteodystrophy, acquired cystic renal disease, recurrent episodes of gross hematuria, pulmonary embolism requiring long-term anti-coagulants, and risk of fatal arrhythmias and heart blocks. *See* Joint App'x at 17. His motion explains that prolonged detention is more likely to kill him because of his disease and this score of related medical issues. For example, it asserts that "immigration detention centers are more deadly than they were during the first year of the COVID-19 pandemic," Appellant's Mot. Br. 13–14, and that "kidney transplantation is the treatment of choice for patients with" his disease, but that a "low proportion of transplant centers [are] willing to evaluate, list, and transplant prisoners," Appellant's Mot. Br. 13. And it adds that while "[l]ocked in prolonged detention," Fulton "cannot pursue a transplant evaluation referred by his treating physician." Appellant's Mot. Reply Br. 1.

dissenting, *infra* at 2 (quoting *Black v. Almodovar*, 156 F.4th 171, 186 (2d Cir. 2025) (Menashi, *J.*, dissenting from the denial of rehearing in banc)).  In Fulton's case, that refrain makes no sense and is unfounded in any event.  No one disputes that, for Fulton, deportation without dialysis is effectively a death sentence. [3] And no one disputes that, while in custody, ICE will not and Fulton cannot arrange his post-deportation medical care.  If there was ever a case in which an immigrant detainee had no "keys" in his pocket or anywhere else besides a court of law, it's this one.  Where Fulton faces a serious risk of rapid physical deterioration, and the Government has not even suggested that he presents a "risk to the community" or a "flight risk," *Vacchio*, 404 F.3d at 677, bail pending appeal is appropriate.

---

[3] As even the dissent acknowledges, this merits question is *not* before us on Fulton's bail motion.  We therefore decline to address the dissent's incorrect account of the record as it relates to the health risks associated with Fulton's deportation and the merits of Fulton's requests for "arrangement of scheduled dialysis appointments in Jamaica, procurement of an at-home dialysis kit, or pursuit of a transplant."  Appellant's Mot. Br. 10–12.

The parties shall confer as to whether any conditions on Fulton's release are required and, if so, what those conditions should be.  If they are unable to agree within a week of the date of the filing of this opinion, they shall return to this merits panel for the purpose of resolving any disagreements. For the foregoing reasons, it is hereby ORDERED that Fulton's motion for release is GRANTED.

MENASHI, *Circuit Judge*, dissenting:

Raheem Fulton was ordered removed from the United States based on his prior conviction for burglary. He was detained pending that removal. The government arranged to return him to his home country of Jamaica. So Fulton is set to be released from custody. But Fulton himself has prevented that release. He went to federal court to object to *how* the government plans to return him. The American government has communicated with the Jamaican government and received assurances that Fulton will receive regular dialysis treatments in Jamaica. Fulton, however, sought more assurances. He wanted a court to order the American government to ensure that he will receive the treatments.[1] Over a year ago, a motions panel of this

---

[1] At oral argument, I asked Fulton's counsel to specify the relief that Fulton wants. I asked: "[W]hat is it that you want a court to order the government to do that it hasn't done?" Oral Argument Audio Recording at 1:53, *Fulton v. Noem*, No. 25-194 (2d Cir. Jan. 28, 2026). Counsel responded: "The only thing the government has provided us is assurances … that dialysis is 'available' in Jamaica. … That's not enough. That's not a plan. What Mr. Fulton is asking for is a plan of some kind." *Id.* at 1:56. I asked: "Is it accurate that you want the government, the United States, to reach an agreement with the government of Jamaica to … set a schedule for when and where all the dialysis treatments are going to occur?" *Id.* at 2:12. Counsel responded: "That's one option, Your Honor. But again, a plan can take many forms." *Id.* at 2:29. I asked: "That would be a court issuing an injunction against the United States to enter into negotiations with a foreign government and reach … an agreement on how it's going to treat somebody in their custody?" *Id.* at 2:40. Counsel responded: "That's what *Charles* instructs us is, in fact, provided. The government must provide a plan for the provision of all medication including medical treatments for a temporary period, so as to provide Mr. Fulton with a cushion so he could seek his own medical care." *Id.* at 2:54 (referencing *Charles v. Orange County*, 925 F.3d 73, 81 (2d Cir. 2019)).

court stayed his removal.[2] A merits panel continues to cogitate over whether Fulton is entitled to any relief. This motion is about whether to release Fulton on bail pending the resolution of his case on the merits.

Whatever our court ultimately decides on the merits, one thing is obvious: The only reason that Fulton remains in custody is because Fulton himself asked the federal courts to delay his removal. For its part, the government "is happy to release him—provided the release occurs in the cabin of a plane bound for [Jamaica]." *DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

That is what makes Fulton's motion for bail so remarkable. Fulton argues—and the majority agrees—that he must be released on bail because "[a]t over two years, Mr. Fulton's detention has become unconstitutionally prolonged and there is no substantial likelihood of removal in the reasonably foreseeable future."[3] But the government has not prolonged Fulton's detention *at all*. Only Fulton has prolonged the detention by litigating the manner of his removal in federal court.

Throughout the litigation, Fulton "has the keys in his pocket and can end his detention immediately by withdrawing [from court] and returning to his native land." *Black v. Almodovar*, 156 F.4th 171, 186 (2d Cir. 2025) (Menashi, J., dissenting from the denial of rehearing en banc) (internal quotation marks omitted). Fulton has instead chosen to pursue additional relief against the government. "Although

---

[2] *See* Order at 2, *Fulton v. Noem*, No. 25-194 (2d Cir. Apr. 30, 2025), ECF No. 34 (granting "a stay of removal pending appeal").

[3] Motion for Bail at 2, *Fulton v. Mullin*, No. 25-194 (2d Cir. June 19, 2026), ECF No. 96.

2

this litigation strategy is perfectly permissible," Fulton "may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).[4] The purpose of judicial process "is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites." *Doherty*, 943 F.2d at 211 (quoting *INS v. Rios-Pineda*, 471 U.S. 444, 450 (1985)). "One illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible." *Rios-Pineda*, 471 U.S. at 450. I would not add to that incentive.

In short, Fulton cannot ask the courts to delay his removal and then turn around and demand release because his removal has been delayed.

---

[4] *See also Baker v. Johnson*, 109 F. Supp. 3d 571, 586 (S.D.N.Y. 2015) ("To the extent the proceedings are extended by appeals or by motion practice initiated by Petitioner, the Court properly takes into account the fact that Petitioner's continued detention may be at least in part a result of his choice to appeal and otherwise prolong the proceedings with motion practice.") (internal quotation marks and alterations omitted); *Debel v. Dubois*, No. 13-CV-6028, 2014 WL 1689042, at *6 (S.D.N.Y. Apr. 24, 2014) ("Delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country."); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013) ("Although Johnson indisputably 'has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.'") (quoting *Andreenko v. Holder*, No. 09-CV-8535, 2010 WL 2900363, at *4 (S.D.N.Y. June 25, 2010)); *Adler v. DHS*, No. 09-CV-4093, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) ("Although it is Adler's right to seek relief from deportation, the delays caused by his motions should not be attributed to the government.").

The majority insists that Fulton is not responsible for the delay because "[n]o one disputes that, for Fulton, deportation without dialysis is effectively a death sentence" and "no one disputes that, while in custody, ICE will not and Fulton cannot arrange his post-deportation medical care." *Ante* at 6*.*

It is true that no one disputes that Fulton needs dialysis, which is why the American government has coordinated with the Jamaican government to ensure that Fulton will receive treatment when he arrives in Jamaica. Fulton's habeas petition concerns whether the government must obtain *additional* assurances about his medical treatment. There has never been a plan to remove Fulton by "deportation without dialysis." *Id.*

If Fulton were to accept removal to Jamaica, he would not face a "death sentence" precisely because the government *has* arranged for post-deportation medical care. The record in this case details the precautions that would accompany his removal. After Fulton became subject to a final order of removal in May 2024, the American government communicated with the Embassy of Jamaica. The Embassy of Jamaica advised the government that it needed to delay the issuance of a travel document "until it had secured approval from the Jamaican Ministry of Health and Wellness." J. App'x 23. After doing so, "the Embassy of Jamaica confirmed dialysis treatment availability for Mr. Fulton and that it would issue a travel document." *Id.* "Both the ICE Health Service Corps and the Jamaican Ministry of Health and Wellness have also approved Mr. Fulton's removal to Jamaica." *Id.* "Before removal, Mr. Fulton will receive a medical care summary and medical transfer summary." *Id.* At one time, Fulton was "scheduled for removal to his native Jamaica on a charter flight on January 30, 2025." *Id.* The government ensured that he was "scheduled to receive dialysis treatment at the ICE staging facility on

both January 27, 2025, and January 29, 2025." *Id.* An officer from DHS spoke personally "with the Security Attache at the Embassy of Jamaica on January 21, 2025, and confirmed that dialysis will be available for Mr. Fulton in Jamaica and that they have informed both Mr. Fulton and his family in Jamaica of his upcoming removal." *Id*.

The merits panel will decide whether a federal court should—or even can—order the government to make *more* arrangements with Jamaica than it already has. To the extent that Fulton claims he will be harmed without additional arrangements, our court has already given him relief to prevent that harm by awarding him a stay of his removal pending the disposition of his appeal.[5] The question to be decided on this motion is *not* whether Fulton is entitled to dialysis treatments when he is removed. It is whether there are extraordinary circumstances that entitle him to a separate form of relief—release on bail from immigration custody into the United States—for the duration of the appeal.

**I**

I would deny the motion for bail because Fulton has not made the showing that *Mapp v. Reno* requires. The majority suggests that Fulton has raised a meritorious legal argument. He has not. But even a meritorious legal argument is not enough to receive bail pending habeas proceedings. The petitioner "must demonstrate" *both* that "the habeas petition raises substantial claims *and* that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir.

---

[5] *See* Order, *supra* note 2, at 2 ("Fulton has further established that he will be 'irreparably injured' absent a stay of removal.") (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

2001) (emphasis added) (alterations omitted) (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990)).

There are no "extraordinary circumstances" here. In his motion, Fulton complains about the length of his detention, but he is responsible for that length. The majority supplies the alternative argument that there are "extraordinary circumstances" because "failure to supply adequate medical care will result in Fulton's 'near certain death.'"[6] That makes no sense. The government agrees that Fulton should receive dialysis treatment. That is why Fulton receives that treatment while in custody. "He currently dialyzes via an AV fistula in his left upper extremity three times per week for approximately four hours per session."[7]

This is not a case in which the detainee has received inadequate medical treatment in custody and seeks release to receive proper treatment. *See, e.g.*, *Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443, 446 (S.D.N.Y. 2020) (providing bail pending habeas when the petitioner was "instructed to obtain follow-up care with a cardiac specialist" but never "received this follow-up care during his detention") (internal quotation marks omitted). Fulton has not alleged that he receives inadequate treatment in custody. In fact, he filed his habeas petition in the first place to prevent his removal so that he could maintain the level of medical care he receives *in custody* in the United States.

---

[6] *Ante* at 4 (quoting Reply to Opposition to Motion for Bail at 1, *Fulton v. Mullin*, No. 25-194 (2d Cir. July 6, 2026), ECF No. 98). Fulton himself does not argue that he will face "near certain death" absent release on bail. He claims that he will face that risk if he is eventually removed to Jamaica without additional assurances.

[7] Motion for Bail, *supra* note 3, at 2.

6

The merits panel will decide whether Fulton is entitled to the relief of additional assurances before he is removed to Jamaica. This motions panel may award him the further relief of release on bail into the United States only if there are "extraordinary circumstances" that make it "necessary" to grant him bail "to make the habeas remedy" he seeks "effective." *Mapp*, 241 F.3d at 226 (quoting *Grune*, 913 F.2d at 44). There are no such circumstances because Fulton is getting the required medical care in custody.

The majority claims that "not even" the government "dares to suggest" that "Fulton's circumstances are not 'extraordinary' enough because he has adequate medical care in custody." *Ante* at 4. In its opposition to this bail motion, however, the government argues that "Fulton fails to show that a *Mapp* release is necessary to make the requested habeas remedy 'effective.'" [8] The government observes that Fulton "implies that he lacks access to family and medical records while in detention, but he submitted relevant medical documents with his bail motion."[9] Those documents illustrate that Fulton not only has access to his records but also receives medical treatment in custody.[10]

---

[8] Opposition to Motion for Bail at 9, *Fulton v. Mullin*, No. 25-194 (2d Cir. June 19, 2026), ECF No. 97.

[9] *Id.*

[10] *See* Motion for Bail, *supra* note 3, at 20 (Exhibit A, a letter from Dr. Sahar Amin, noting that Fulton "has been on dialysis due to End Stage Renal Disease (ESRD) for the past 20 years, getting dialysis at [Erie County Medical Center] since 8/2023. He came under my care in May 2024 and was previously seen by other provider(s). Mr. Fulton is ESRD with unknown etiology. He makes minimal amount of urine and requires dialysis three times a week. He has been very involved in his care. His behavior and

The government did not make a more direct argument that Fulton receives adequate medical care in custody only because Fulton himself does not argue in his motion that inadequate care in custody is a reason for granting him bail.[11] Fulton instead argues that the

_____

attitude in the dialysis facility has been exemplary. He is compliant in all aspects of his care and meticulously follows medical advice.").

[11] The majority asserts in a footnote that "Fulton clearly argues that it is his 'serious medical conditions *combined with* his prolonged detention,' not merely his prolonged detention, that produce the extraordinary circumstances that justify granting his bail motion." *Ante* at 5 n.2 (quoting Reply to Opposition to Motion for Bail, *supra* note 6, at 7). That quotation from Fulton appears under the heading that "Respondents-Appellees Continue to Abdicate Their Legal Duty to Provide Medical Discharge Planning." Reply to Opposition to Motion for Bail, *supra* note 6, at 7. In that section of his submission, Fulton argues that his detention has become prolonged because he is "awaiting appropriate in-custody medical discharge planning in advance of removal." *Id.* That is again an argument about the manner of his removal rather than a claim that his treatment in custody is inadequate. The majority also misrepresents Fulton's argument when it asserts that he "explains that prolonged detention is more likely to kill him because of his disease and []his score of related medical issues." *Ante* at 5 n.2. The majority's assertion is based on a sentence in Fulton's motion noting that "immigration detention centers are more deadly than they were during the first year of the COVID-19 pandemic." Motion for Bail, *supra* note 3, at 13-14. That sentence relies on a study about overall detention conditions but offers no argument about Fulton's health in particular. The evidence in the record shows that Fulton has received regular treatment at Erie County Medical Center while he remains in custody, and there is no indication that his detention has worsened his illness. *See supra* note 10. Fulton makes no showing that there is an imminent risk that his kidney disease will be exacerbated by conditions in the detention facility. *See United States v. Lopez*, No. 18-CR-736-1, 2023 WL 4965171, at *2 (S.D.N.Y. Aug. 3, 2023) (noting that the petitioner was "at a higher risk for severe illness from COVID-19" but denying bail pending

8

prolonged length of his detention is the "extraordinary circumstance" that warrants his release on bail.[12]

In today's opinion, the majority introduces the new argument that bail is necessary for Fulton to receive medical treatment. So the government has not had the opportunity to respond. And the majority gets even more creative when it identifies the "important *fact[]*" that in May 2024 Fulton missed a dialysis treatment and went to the emergency room. *Ante* at 4. The majority apparently concludes that this medical emergency, which occurred over two years ago, is an extraordinary circumstance that requires Fulton's release today.

It is not. Fulton not only receives adequate medical care in custody today—by his own admission—but he also does not argue that the May 2024 incident entitles him to bail. In his motion for bail, when Fulton identifies "extraordinary circumstances," he does not mention the May 2024 emergency at all.[13] The Supreme Court has

habeas because "the fact that there are currently no reported positive cases is indicative of a situation which could not be deemed dire").

[12] Motion for Bail, *supra* note 3, at 10-11 ("Mr. Fulton's case also presents extraordinary circumstances that require granting bail to make the habeas remedy effective. … As deportation cannot lawfully occur at this juncture in light of Respondents-Appellees' inaction, there is no significant likelihood of removal in the reasonably foreseeable future and Mr. Fulton should be released under reasonable terms of supervision.") (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).

[13] Motion for Bail, *supra* note 3, at 10-14. When discussing his "medical discharge planning" in his motion, Fulton does assert that release would allow him to pursue a transplant. *See id.* at 12. He claims that "there is a low proportion of transplant centers willing to evaluate, list, and transplant prisoners." *Id.* at 13. Federal guidelines, however, provide that "one's status as a prisoner should not preclude them from consideration for a transplant" and that "immigration status should not be used as a criterion in

emphasized that "[b]ecause courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). In other words, "[f]ederal courts adhere to the principle of party presentation," and "[t]hat principle—the 'rule that points not argued will not be considered'—distinguishes our adversarial system of justice from an inquisitorial one." *Id.* (quoting *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in the judgment)). In this case, the majority instead adopts an active role, reframes the issues, and makes points on which Fulton does not rely.[14]

In contrast to its comparatively robust response to this dissent, the majority grants bail to Fulton with a cursory analysis. That is troubling. Our court has "explained that 'the standard for bail pending habeas litigation is a *difficult* one to meet.'" *Mapp*, 241 F.3d at 226 (emphasis added) (alteration omitted) (quoting *Grune*, 913 F.2d at 44). While we have recognized "the inherent authority of the federal district courts to admit habeas petitioners to bail," we have "stressed

---

determining transplantation candidacy." Health Res. & Serv. Admin., General Considerations in Assessment for Transplant Candidacy (Dec. 2025), https://perma.cc/JN3P-T6RY. Moreover, at oral argument, Fulton's attorney remarked that "Mr. Fulton … has a loved one who is willing to be a live kidney donor." Oral Argument Audio Recording, *supra* note 1, at 18:20. In his motion, however, Fulton no longer even mentions a donor, let alone explains why his remaining in custody—with regular treatment at Erie County Medical Center—prevents coordination with that donor.

[14] The majority supplies the additional argument that Fulton does not "present[] a 'risk to the community' or a 'flight risk,'" *ante* at 6 (quoting *Vacchio v. Ashcroft*, 404 F.3d 663, 677 (2d Cir. 2005)), even though Fulton does not argue that he could or should be released on that basis.

10

the constraints on this facet of judicial power." *Id.* at 226 n.5. We have "emphasized that this power is a limited one, to be exercised in special cases only," *id.* at 226, and we have directed that "[t]he release request ordinarily must be measured against a *heightened standard* requiring a showing of exceptional circumstances," *id.* at 226 n.5 (emphasis added) (quoting *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969)). The majority today blows past those guardrails.

## II

The majority's decision to relax the *Mapp* standards and to introduce its own arguments is especially regrettable in this case, in which we do not appear to have a proper habeas petition before us in the first place.

The Supreme Court has identified cases in which "the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). It has explained that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Id.* In this case, Fulton does not seek release but instead asks a court to order the government to guarantee additional treatments in Jamaica. By asking a court to order the government to take actions other than release, Fulton is actually seeking relief akin to a mandatory injunction or mandamus. *Cf. Miguel v. McCarl*, 291 U.S. 442, 452 (1934) ("The mandatory injunction here prayed for is in effect equivalent to a writ of mandamus, and governed by like considerations.").

Allowing Fulton to bring such a claim in habeas "would require us to broaden the scope of habeas relief beyond recognition," *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring), and "would extend the writ of habeas corpus far beyond its scope 'when

11

the Constitution was drafted and ratified,'" *Thuraissigiam*, 591 U.S. at 107 (quoting *Boumediene v. Bush*, 553 U.S. 723, 746 (2008)). Fulton's "use of the writ would have been unrecognizable at that time." *Id.* While "[h]abeas has traditionally been a means to secure *release* from unlawful detention," Fulton "invokes the writ to achieve an entirely different end," namely to order the American government to make additional transfer arrangements with the government of Jamaica. *Id.*

While our precedent authorizes us to grant bail to a detainee pending the resolution of his habeas petition, we have no authority to grant bail to a detainee seeking injunctive or mandamus relief. The distinction is important. We may grant bail to a habeas petitioner because if he were to prevail, the court would order him released at the end of the lawsuit. In this way, an early release may be "necessary to make the habeas remedy" of eventual release "effective." *Mapp*, 241 F.3d at 226 (quoting *Grune*, 913 F.2d at 44). But that logic does not apply to this case. If Fulton succeeds on his purported "habeas" claim, he will not be entitled to release into the United States. A court will instead order the government to obtain additional medical assurances before removing him to Jamaica. In no way is an early release on bail "necessary" to make that eventual remedy "effective." *Id.*

* * *

Because no "extraordinary circumstances" justify a grant of bail in this case, I would deny the motion for bail. I dissent from the decision of the court to grant it.

12